1  RODGER M. LANDAU (State Bar No. 151456)
   SHARON M. KOPMAN (State Bar No. 164449)
2  LANDAU & BERGER LLP
   1801 Century Park East, Suite 1460
3  Los Angeles, California 90067
   Telephone: (310) 557-0050
4  Facsimile: (310) 557-0056
   rlandau@lblawllp.com
5  skopman@lblawllp.com

6
   Proposed Counsel for Vineyard National Bancorp
7
                    UNITED STATES BANKRUPTCY COURT
8
                 FOR THE CENTRAL DISTRICT OF CALIFORNIA
9
                           RIVERSIDE DIVISION
10

11

12  In re                                    Bk. No.  09-26401-RN

13  VINEYARD NATIONAL BANCORP,                Chapter 11

14        Debtor.                             **DEBTOR AND DEBTOR-IN-POSSESSION
                                              VINEYARD NATIONAL BANCORP'S
15                                            INITIAL STATUS REPORT**

16                                            **HEARING**:
17                                            Date: August 13, 2009
                                              Time: 2:00 p.m.
18                                            Place: Courtroom 301
                                                    3420 Twelfth Street
19                                                    Riverside, CA 92501

20

21

22

23

24

25

26

27

28

Landau & Berger
LLP

1    Debtor and Debtor-in-Possession Vineyard National Bancorp, a California Corporation

2    ("Debtor"), hereby submits this initial status report as required by the "*Order Scheduling Chapter 11*

3    *Status Conference*" filed on July 23, 2009 (Docket No. 10).

4    I.    **BACKGROUND**

5         A.    **CORPORATE STRUCTURE & NATURE OF DEBTOR'S BUSINESS**

6         Debtor was incorporated in California in 1988 and was registered as a bank holding company

7    under the Bank Holding Company Act of 1956, as amended. As a bank holding company, the

8    Debtor's primary regulator was the Board of Governors of the Federal Reserve System ("FRB"). Its

9    principal business was to serve as the holding company for a wholly-owned subsidiary, Vineyard

10   Bank, National Association[1] (the "Bank") and other banking or banking-related subsidiaries.[2]  Other

11   than the business conducted by the Bank and the Debtor's other subsidiaries, the Debtor has not

12   engaged in any other activities to date. As a legal entity separate and distinct from its subsidiaries, the

13   Debtor's principal source of funds was dividends paid by the Bank and the Debtor's other

14   subsidiaries. As described below, on July 17, 2009, the Office of the Comptroller of the Currency

15   ("OCC") closed the Bank and appointed the Federal Deposit Insurance Corporation ("FDIC") as

16   receiver. Upon the closure of the Bank, the Debtor ceased being a bank holding company.

17        The Debtor is publicly held and subject to the reporting requirements of the Securities

18   Exchange Act of 1934, as amended. The Debtor's common stock was delisted from trading on

19   NASDAQ in the second quarter of 2009 and is currently traded in over-the-counter market through

20   the Pink OTC Markets, Inc. (also known as the Pink Sheets) under the ticker symbol "VNBC-PK".

21   The Debtor's Series D Preferred Stock was delisted from trading on NYSE AMEX (formerly AMEX)

22   in the second quarter of 2009. In addition to the Debtor's common stock and Series D Preferred

23   Stock, the Debtor has issued and outstanding Series C Preferred Stock. As a public company, an

24   _____

25   [1]    The Bank operated as a commercial bank in the counties of Orange, Los Angeles, Marin, Riverside, San
     Bernardino and San Diego and had sixteen full-service branches in the cities of Chino, Corona, Covina, Crestline,
26   Diamond Bar, Irvine, Irwindale, Lake Arrowhead, La Verne, Manhattan Beach, Rancho Cucamonga, San Diego, San
     Dimas, San Rafael, Upland and Walnut.
27   [2]    In addition to the Bank, the Debtor previously owned two consolidated operating subsidiaries, 1031 Exchange
     Advantage, Inc. and 1031 Funding & Reverse Corp. (collectively, the "Exchange Companies"), which acted as qualified
     intermediaries under Section 1031 of the Internal Revenue Code of 1986. The Exchange Companies were acquired in
28   December 2007 and sold in September 2008.

1    extensive list of shareholders was submitted with the Debtor's bankruptcy petition. The List of Equity

2    Security Holders was filed with this Court on July 21, 2009 (Docket No. 1).

3        The capital raised by the Debtor and downstreamed to the Bank for operating purposes was

4    primarily obtained through ten (10) Statutory Business Trusts (the "Trusts") which were established

5    over a period of approximately seven years. [3]  The Debtor issued individual junior subordinated

6    indentures to each of the Trusts that were scheduled to mature on various dates ("Trust Indentures").

7    The Trusts issued two types of securities, capital securities and common securities. The Debtor owns a

8    100% beneficial interest in each of the Trusts' common securities, which is approximately 3% of the

9    total beneficial interests outstanding in each of the Trusts. The capital securities, which constitute the

10   remaining approximately 97% of beneficial interests in each of the Trusts, are owned by third parties.

11   In or about December 19, 2002, the Debtor, separate and apart from the Trusts, issued another junior

12   subordinated indenture due 2017 in order to raise capital for the Bank ("2017 Indenture" and together

13   with the Trust Indentures, collectively referred to hereinafter as the "Subordinated Indentures").

14   Approximately $5.2 million is owed on the Subordinated Indentures as of the Petition Date.

15       In addition to the above, the Debtor has a revolving line of credit ("Loan") with First

16   Tennessee Bank, National Association ("FTN") which was secured solely by 100% of the stock of the

17   Bank. Approximately $51 million is owed to FTN as of the Petition Date.

18       Due to the Debtor's financial condition and restrictions enforced by the FRB (as set forth in

19   detail below) the Debtor has not made any payments due on the Subordinated Indentures since

20   approximately September 2008 or due to FTN since approximately July 2008, and is in default under

21   each of these instruments.

22       B.    **THE MAJOR EVENTS & CIRCUMSTANCES LEADING TO THE**

23             **BANKRUPTCY FILING**

24       In or about May 2008, the Bank was informed by the OCC that, as a result of an

25   examination, the Bank had been designated to be in a "troubled condition" for purposes of Section

26   914 of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("Section 914").

27   Issues contributing to the deterioration of the Bank's financial condition included significant charge-

28   ──────────────────
     [3]    The ten Trusts are numbered  I, II, III, IV, V, VI, VII, VIII, IX and XI.

1  offs and write-downs in its loan portfolios, increases in non-accrual loans, an increasing migration of

2  loans into non-accrual and substandard categories, capital deterioration and loss of liquidity.  Based on

3  continuing deterioration of the Bank's financial condition, in July 2008 the Bank entered into a

4  Consent Order with the OCC which, among other things, required the Bank to comply with various

5  requirements affecting its loan portfolio, restricted the Bank from taking various actions without the

6  consent of the OCC, and required the Bank to meet and maintain higher capital standards.

7         In or about June 2008, the Debtor was informed by the FRB that, as a result of an

8  examination of the Debtor by the FRB and the Bank's condition, the Debtor had been designated to be

9  in a "troubled condition" for purposes of Section 914.  In addition to the issues affecting its subsidiary

10 Bank, issues contributing to the deterioration of the Debtor's financial condition included the debt

11 service on the Debtor's indentures and line of credit, an inability to up-stream or receive dividends or

12 other distributions from the subsidiary Bank, capital deterioration and loss of liquidity.  Due to the

13 continuing deterioration of the financial condition of the Bank and the Debtor, in September 2008 the

14 Debtor entered into a Written Agreement with the FRB which, among other things, restricted the

15 Debtor from taking various actions without the consent of the FRB and required the Debtor to submit

16 a capital plan for the consolidated organization to the FRB for review and approval.

17        In the ensuing months, both the Bank and the Debtor took a number of actions, with the

18 necessary regulatory approval, in an attempt to position the Debtor to once again serve as a source of

19 financial strength for the Bank, including, without limitation, attempts to raise additional regulatory

20 capital to ensure that the Bank complied with the enhanced regulatory capital requirements set by the

21 OCC, not making payments to certain third parties (including, without limitation, dividend payments

22 to the holders of its common stock and preferred stock), and refraining from the acceptance of

23 dividends and other payments from the Bank.  However, due to, among other things, the worsening

24 economy, the Debtor was incapable of raising capital or otherwise implementing strategic alternatives

25 to enhance the financial position of the Bank, including, without limitation, the sale of the Bank.

26 During this period, both the Debtor and the Bank received notices of non-compliance, particularly as

27 it related to the inability to raise capital and comply with the capital requirements imposed on the

28 Bank and the Debtor.  Each of the Bank and the Debtor responded to the notices of non-compliance

4

1  and addressed many of the administrative issues within their control.  However, the inability of the

2  Debtor to raise capital or to otherwise implement other strategic alternatives to enhance the financial

3  position of the Bank, including, without limitation, the sale of the Bank, caused the Bank and the

4  Debtor to remain in non-compliance with the Consent Order and Written Agreement.  On July 17,

5  2009, the OCC closed the Bank and appointed the FDIC as a receiver.  On that same date, the FDIC

6  facilitated the acquisition of most of the assets and liabilities of the Bank by California Bank & Trust.

7         C.  **CHAPTER 11 FILING**

8         Following the closure of the Bank on July 17, 2009, on July 21, 2009 (the "Petition Date"),

9  the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code

10  (the "Bankruptcy Code").  On that same date, the Debtor filed its Schedules of Assets and Liabilities

11  ("Schedules") and its Statement of Financial Affairs.[4]  The Debtor has also filed its 7 Day Package

12  with the Office of the United States Trustee ("OUST") as required by the OUST Guidelines.  The

13  Debtor is in compliance with its duties as set forth under 11 U.S.C. §§ 521, 1107 and Rule 1007 of the

14  Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The 341(a) Meeting of Creditors

15  has been scheduled by the OUST for August 27, 2009 at 2:30 p.m. The Debtor continues to operate its

16  business and manage its affairs as a Debtor-in-Possession pursuant to sections 1107(a) and 1108 of the

17  Bankruptcy Code.  No trustee or examiner has been appointed in this Chapter 11 case.

18  III.  **POST-PETITION OPERATIONS**

19        The Debtor is currently operating with a skeletal staff consisting of two officers, Jim LeSieur,

20  the Chief Financial Officer, and Donald Pelgrim, the Executive Vice President and Chief

21  Administrative Officer.  The Debtor has also hired an independent contractor at an hourly rate of $80

22  per hour to perform controller type services, such as maintaining the debtor's post-petition books and

23  records, preparing the monthly operating reports required by the OUST Guidelines, and providing any

24  other assistance required by Messrs. LeSieur and Pelgrim to administer the Debtor's estate. The

25  Debtor also retained four of its pre-petition Board of Directors, as follows: Douglas Kratz (Chairman),

26  Glen C. Terry (Director), Perry Hansen (Director), and David Buxbaum (Director).

27
28

---

[4]   Debtor's Summary of Schedules reflect assets totaling approximately $2.1 million and liabilities totaling approximately $182 million.  Accordingly, the Debtor is not a "small business debtor" as defined in section 101(51D) of the Bankruptcy Code.

1    The Debtor submitted a 90 day projected budget with the OUST 7 day package, a true and

2 correct copy of which is attached hereto as <u>Exhibit 1</u>.  On July 21, 2009, the Debtor filed Applications

3 to employ Landau & Berger, LLP as its bankruptcy counsel and Manatt, Phelps & Phillips, LLP as

4 special corporate, banking, and litigation counsel (Docket Nos. 2 and 4).  The Debtor may need to hire

5 an accounting firm to handle both the preparation of its tax returns and an audit of its 2008 tax returns

6 by the Internal Revenue Service. On July 23, 2009, the Debtor filed a Motion seeking to reject certain

7 unexpired non-residential leases and one executory contract (Docket No. 12).

8    IV.    **PLAN OF LIQUIDATION**

9    The Debtor, with the aid of its two officers, both of which have extensive banking and

10 regulatory experience, intends to file its disclosure statement and liquidating plan ("Plan") by mid-

11 September 2009.[5]  The focus of the Plan, in addition to winding down the debtor and liquidating any

12 assets, is to investigate potential causes of action against various entities and/or individuals and to

13 prosecute any such actions that may lead to potentially increased recoveries for the Debtor's creditors.

14 The knowledge and background of the two officers administering the Debtor's estate not only will

15 make the wind-down and liquidation more efficient, but will also enhance the Debtor's ability to

16 investigate and prosecute the estate's causes of action. This is very important since such actions are

17 likely to be the greatest source of recovery for the Debtor's creditors and other interested parties. It is

18 the Debtor's intent to emerge from the Chapter 11 case as soon as reasonably practicable and structure

19 its Plan such that the post-confirmation liquidating agent will, among other things, prosecute any and

20 all causes of action that potentially will maximize recoveries for the Debtor's creditors and other

21 interested parties and handle objecting to any disputed proofs of claim that are filed.

22

23

24

25

---

26    [5]    If the Disclosure Statement and Plan are filed on or about September 14, 2009, the Debtor likely would request,
pursuant to Local Bankruptcy Rule 3017-1,  that a hearing on the adequacy of its Disclosure Statement be scheduled for
27 on or about October 22, 2009.  If the Disclosure Statement is approved, the Debtor would seek to serve its court-
approved solicitation package by approximately October 28, 2009 and schedule the confirmation hearing for sometime
28 on or around November 25, 2009.

V.      **REQUEST TO SCHEDULE A BAR DATE TO FILE PROOFS OF CLAIMS**

Because the Debtor intends to file a Plan of Liquidation by mid-September 2009, the Debtor requests that the Court, pursuant to Bankruptcy Rule 3003, fix the general bar date to file proofs of claim as of October 12, 2009, approximately 60 days after the status conference hearing. The Debtor will serve the notice of claims deadline as required by Local Bankruptcy Rule 3001-1.


Dated: July 30, 2009                        LANDAU & BERGER LLP
                                            RODGER M. LANDAU
                                            SHARON M. KOPMAN


                                            By:___/s/ Sharon M. Kopman_____
                                                    Sharon M. Kopman
                                            Proposed Counsel for Vineyard National Bancorp

# EXHIBIT 1

**Vineyard National Bancorp**
**Projected Cash Flow Statement**

| | (11 days) Jul-09 | Aug-09 | Sep-09 | (18 days) Oct-09 | Total | Comments |
|---|---|---|---|---|---|---|
| **Beginning Cash Balance:** | $1,967,931 | $ 1,924,260 | $1,868,415 | $1,813,070 | $1,967,931 | |
| | | | | | | |
| **Sources of Cash:** | - | - | - | - | - | |
| | | | | | | |
| **Uses of Cash:** | | | | | | |
| Professional fees | | | | | | |
| Professional fee - Legal | | | | | | |
| Bankruptcy (Landau & Berger) | - | - | - | - | - | $200,000 retained paid pre-petition |
| General Counsel (Manatt) | - | - | - | - | - | $300,000 retained paid pre-petition |
| | | | | | | |
| Professional fee - Accounting | | | | | | |
| IRS Examination | 5,000 | 10,000 | 10,000 | 5,000 | 30,000 | |
| 2009 Tax Preparation (KPMG) | - | - | - | - | - | |
| | | | | | | |
| Insurance | | | | | | |
| Workers' Compensation | 177 | 500 | 500 | 250 | 1,427 | |
| D&O | - | - | - | - | - | |
| General Liability | 100 | 250 | 250 | 125 | 725 | |
| Property | 100 | 250 | 250 | 125 | 725 | |
| | | | | | | |
| General Operating Expenses | | | | | | |
| Salaries & Payroll Taxes | 13,798 | 37,190 | 37,190 | 21,595 | 109,773 | |
| Controller Services-Chris Damore | 3,000 | 3,400 | 3,400 | 1,700 | 11,500 | |
| Office Lease & Storage | 5,396 | 3,305 | 3,305 | 1,919 | 13,925 | |
| Purchase of Fixed Assets | 15,000 | - | - | - | 15,000 | |
| Supplies | 500 | 200 | 200 | 100 | 1,000 | |
| Postage & Courier | 600 | 250 | 250 | 125 | 1,225 | |
| Licenses and Permits | - | 500 | - | - | 500 | |
| | | | | | | |
| Total Uses of Cash | 43,671 | 55,845 | 55,345 | 30,939 | 185,800 | |
| | | | | | | |
| **Ending Cash Balance:** | $1,924,260 | $ 1,868,415 | $1,813,070 | $1,782,132 | $1,782,132 | |

**Exhibit 1**

8

# PROOF OF SERVICE OF DOCUMENT

I, Natalie M. Cereseto, am employed in the city and county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is: Landau & Berger LLP, 1801 Century Park East, Suite 1460, Los Angeles, CA 90067.

A true and correct copy of the foregoing document described: **DEBTOR AND DEBTOR-IN-POSSESSION VINEYARD NATIONAL BANCORP'S INITIAL STATUS REPORT** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On July 30, 2009 , I checked the CM/ECF docket for this bankruptcy case and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

**Timothy J Farris**       timothy.j.farris@usdoj.gov
**United States Trustee**  ustpregion16.rs.ecf@usdoj.gov
**Jeffrey W Broker**       jbroker@brokerlaw.biz
**Sharon M Kopman**        skopman@lbalawllp.com; ncereseto@lblawllp.com
**Rodger M Landau**        rlandau@lbalawllp.com; kmoss@lbalawllp.com
**John W Mills**           jmills@kilpatrickstockton.com
**Ivan L Kallick**         ikallick@manatt.com; ihernandez@manatt.com

☐ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:** On July 30, 2009, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**BY U.S. MAIL**
Honorable Richard M. Neiter
U.S. Bankruptcy Court
255 East Temple Street, Suite 1652
Los Angeles, CA 90012

☒ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on July 30, 2009, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 30, 2009 | Natalie M. Cereseto | |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

## VINEYARD BANCORP SERVICE LIST

*Debtor, U.S. Trustee, Creditors with
20 Largest Claims, & Special Notice*

**Debtor**
Vineyard National Bancorp
4000 Barranca Parkway Suite 250
Irvine, CA 92604

**Creditors with 20 Largest Claims**

Chuck Keagle
8651 Madrone Avenue
Rancho Cucamonga, CA 91730

FBR Capital Markets
1001 Nineteenth Street North
Arlington, VA 22209

First Tennessee Bank NA
Attn David Work
845 Crossover Lane Suite 150
Memphis, TN 38117

Frank Alvarez
1080 W 22nd Street
Upland, CA 91784

Joel Ravitz
11111 Santa Monica Blvd
Suite 1450
Los Angeles, CA 90025

US Bank NA
Attn Vattana Kimly for VNBC Trust
1 Federal St 3rd Floor
Boston, MA 02110

Russell Rokes for Sub Debentures
1 Federal St 3rd Floor
Boston, MA 02110

Counsel for Wilmington Trust Co.

Todd C. Meyers, Esq.
Sameer K. Kapoor, Esq.
Kilpatrick Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530

Jon Salmanson and Norman Morales
Northeast Securities
100 Wall Street 8th Floor
New York, NY 10005

Wells Fargo Delaware Trust Co
Attn Molly Breffitt for VNBC Trust
919 North Market St Suite 700
Wilmington, DE 19801

Bank of New York
Mudassir Mohamed for VNBC Trusts
601 Travis Street 16th Floor
Houston, TX 77002

PricewaterhouseCoopers
2020 Main St Ste 400
Irvine, CA 92614

Robb Quincey
460 N Euclid Ave
Upland, CA 91786

The Concord Group
130 Newport Center Drive
Suite 230
Newport Beach, CA 92660

**Special Notice List**

John C. Grosvenor
Manatt, Phelps & Phillips, LLP
695 Town Center Drive
Costa Mesa, California 90064